AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Jose MAGANA GARCIA, year of birth 1998 | ) | Case No.  MJ 25-3517 LF |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____August 27, 2025____ in the county of ____Bernalillo____ in the ____ District of ____New Mexico____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A) | Possession with intent to distribute 400 grams or more of fentanyl. |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A) | Possession with intent to distribute of 1kg or more of heroin |

This criminal complaint is based on these facts:

Please see the attached affdavit of DEA Special Agent Emmett Fritz, which is incorporated by reference and has been reviewed and approved by AUSA Maria Stiteler

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Emmett Fritz, Special Agent
*Printed name and title*

Sworn to before me by telephone or other reliable electronic means.

Date: ~~08/29/2025~~ August 30, 2025

_____
*Judge's signature*

City and state:        Albuquerque, NM

Honorable Laura Fashing, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Emmett Fritz, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Drug Enforcement Administration ("DEA") and have been since July 2018. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request arrest and search warrants. Furthermore, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

2. I graduated from the DEA Training Academy in Quantico, Virginia, after receiving approximately 16 weeks of specialized narcotics-related training. While at the DEA Training Academy, I became familiar with how controlled substances are consumed, manufactured, packaged, marketed, and distributed. I received training on surveillance and counter-surveillance operations, undercover operations, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrant executions, and vehicle stops.

3. My experience as a Special Agent includes, but is not limited to: conducting surveillance, interviewing witnesses, writing affidavits for and executing search and seizure warrants, debriefing defendants and confidential sources, and working with undercover agents and informants. I have received training and have experience in the investigation of violations of the federal drug, firearms, and money laundering laws, including the offenses listed below. As a result, I am familiar with matters including, but not limited to, the means and methods used by drug traffickers and drug trafficking organizations to purchase, transport, store, and distribute illegal drugs and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogues used by drug traffickers. I have also spoken with other law enforcement officers with expertise and experience in these areas.

4. This case is being investigated by the DEA. I have personally participated in the investigation described below. I make this affidavit based on my participation in the investigation, as well as reports and information made available to me by other agents and Task Force Officers ("TFOs"), as well as other law enforcement authorities. This affidavit is intended only to show that there is sufficient probable cause for the requested criminal complaint and arrest warrant, and does not set forth all of my knowledge or the surrounding facts pertaining to this matter.

1

**PROBABLE CAUSE**

5.  This affidavit is made in support of the issuance of a criminal complaint and arrest warrant charging Jose MAGANA GARCIA, year of birth 1998 ("MAGANA GARCIA") with the following violations:

    a.  21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being Possession with Intent to Distribute 400 Grams or more of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); and

    b.  21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being, Possession with Intent to Distribute One Kilogram or more of Heroin.

6.  On August 13, 2025, DEA Agents conducted an undercover buy walk operation that involved a known fentanyl trafficker and a source of supply (SOS) for fentanyl who was later identified as Jose MAGANA GARCIA (MAGANA GARCIA). On this date, a DEA Task Force officer, acting in an undercover capacity (hereinafter UC), contacted this known fentanyl trafficker and arranged for the purchase of approximately 2,000 fentanyl pills. The fentanyl trafficker advised the UC to meet her/him at a motel located in the 75 Hotel Circle Ave Northeast, Albuquerque, NM. The fentanyl trafficker further told the UC that the source of supply (SOS) would be bringing the narcotics to her/him and the UC at this location. At the arranged time, UC met with the fentanyl trafficker at this Northeast Albuquerque motel.

7.  Once UC and fentanyl trafficker met in the parking lot of this motel, another unidentified female also was present. The fentanyl trafficker stated to the UC that this unidentified female would be contacting her SOS to bring the requested amount of fentanyl to the UC to complete the drug transaction. After some time, Agents and the UC observed a red Chrysler 200 bearing New Mexico license plate BYWR18 arrive to the motel parking lot and park near the UC. The fentanyl trafficker was seated in the passenger seat of the UC's vehicle and, when the red Chrysler 200 arrived, she/he indicated to the UC that this was the other female's SOS and that this individual would be supplying the narcotics. According to New Mexico MVD, this license plate returns to a red Chrysler sedan registered to a Ronnie Garcia at 7501 Menaul Blvd Northeast, Albuquerque, New Mexico. At this time, the UC could not see the driver of the Chrysler 200, but Agents were later able to positively identify the driver as MAGANA GARCIA as described later in this criminal complaint.

8.  Once the Chrysler 200 was in the parking lot, the unidentified female approached the driver of the Chrysler 200 and the UC observed her enter the Chrysler 200. After a short amount of time, the unidentified female exited the Chrysler and asked the UC to provide the money to purchase the fentanyl pills. The UC stated to the unidentified female that she needed to provide the narcotics first, before the money exchange. The unidentified female re-entered the Chrysler 200 passenger seat, and after another short moment, she reemerged and handed the UC two green plastic bundles which contained the fentanyl pills. At this time, the UC departed from the location.

2

9.  Surveillance was maintained on the red Chrysler 200 and Agents followed it to 11800 Montgomery Blvd Northeast, Albuquerque, New Mexico. While following the red Chrysler 200, Agents observed the driver conduct various counter surveillance maneuvers which included changes in speed, U-turns, and unusual routes through neighborhoods. Based on my training and experience, this is a common tactic amongst drug traffickers in order to detect law enforcement following them. Agents observed the driver (that is, MAGANA GARCIA) park the red Chrysler 200 in the parking lot of the 11800 Montgomery Blvd Northeast, near building #2, and proceed into, at the time, an unknown apartment which was later identified as apartment #1014. Surveillance was maintained on the apartment and the vehicle.

10. At a later time on this date, Agents observed the driver of the red Chrysler 200 depart from the 11800 Montgomery Blvd Northeast, apartment complex and drive to several different locations. Through surveillance, Agents were able to observe, based on their training and experience, the driver conduct what appeared to be various narcotic hand-to-hand drug transactions.

11. Agents continued to follow the red Chrysler 200 and Agents then asked assistance from the Albuquerque Police Department (APD) to conduct a traffic stop on the vehicle. At the intersection of Montogomery Blvd Northeast, and Bermuda Ave Northeast, APD Officers initiated a traffic stop on the red Chrysler 200. The location for the stop is very close to the 11800 Montgomery Blvd Northeast. The reported reason for the stop was the driver of the red Chrysler 200 was speeding and almost collided with a curb. Once the vehicle was stopped, APD officers conducted their investigation, and it was at this time MAGANA GARCIA was identified through a Mexican driver's license. Once the stop was completed, MAGANA GARCIA departed from the area and Agents ceased surveillance.

12. Between August 14, 2025 to August 25, 2025, DEA Agents conducted various other surveillance operations at 11800 Montgomery Blvd Northeast #1014, on MAGANA GARCIA. Agents observed MAGANA GARCIA coming and going from this location several times.  During this time, DEA agents did not see anyone other than MAGANA GARCIA enter or exit the apartment. Agents were able to gather lease records for apartment #1014 from the apartment management, and learned through these records that the apartment was rented by another individual who was not MAGANA GARCIA. Based on my training and experience, it is common for drug traffickers to use a different person who is qualified to rent an apartment to do the initial renter agreement, so the drug trafficker who will control the residence can avoid law enforcement detection and ensure anonymity.

13. With this information, a state search warrant to search the apartment was written by DEA Task Force Officer Sarah Martinez, who is also a Special Agent with the New Mexico Second Judicial District Attorney's Office. This search warrant was sworn and affirmed by the Honorable District Judge Wernersbach on August 22, 2025.

3

14. On August 27, 2025, DEA Agents executed this state search warrant at 11800 Montgomery Blvd Northeast, Apartment #1014. Upon execution of the warrant, Agents located and detained MAGANA GARCIA inside of the apartment lying on a couch in the living room. Other than MAGANA GARCIA, no one else was present in the apartment. Once the scene was secure, a search of the residence was conducted. During the search of the residence, among other items, Agents located the following:

    a. 8,016.1 gross grams of a small blue pills stamped as "M30" that field-tested as fentanyl,

    b. 4330.7 gross grams of a brown powder that field-tested as heroin, and

    c. 34.8 gross grams of a of white crystal like substance that field-tested as methamphetamine,

15. When Agents searched the residence, the majority of the fentanyl pills and heroin was located inside of a void of the couch that MAGANA GARCIA was sleeping on when Agents entered the residence. There was a hold carved into the couch under the cushion that allowed the large bundles of fentanyl and heroin to be placed in the void for easy access and concealment. There were other smaller amounts of fentanyl and heroin within the residence, specifically within the kitchen of the residence. Agents located several pre-packaged user amount of fentanyl pill and heroin bundles, which based on my training and experience, indicated they were ready for distribution by MAGANA GARCIA. Furthermore, through the kitchen Agents located various types of packaging material to include; balloons, clear and green plastic wrap, and foil. There was also evidence of MAGANA GARCIA preparing to package more fentanyl or heroin into balloons as Agents observed scissors and balloons pre-cut to be used as packaging.

16. In summary, based on what was located inside of MAGANA GARCIA's apartment, I have probable cause to believe that MAGANA GARCIA is involved in the illegal trafficking of fentanyl and heroin. Based on my training and experience, I know these amounts of fentanyl pills and heroin are indicative of drug trafficking activities and amounts.

17. This affidavit has been reviewed by AUSA Maria Elena Stiteler.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Emmett Fritz
Special Agent
U.S. Drug Enforcement Administration


Telephonically sworn and electronically signed
this __30th__ day of August 2025.

Honorable Laura Fashing
United States Magistrate Judge

5