IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 25-3549 JB |
| | ) | |
| JOSE MAGANA GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT AND DISQUALIFY UNITED STATES ATTORNEY

Defendant has moved to dismiss his indictment on the ground that Ryan Ellison cannot serve as the Acting U.S. Attorney for the District of New Mexico. *See* Motion to Dismiss, Doc. 16 ("MTD"). Defendant is mistaken that Mr. Ellison is not properly serving as the Acting U.S. Attorney, but even if that were correct, dismissal of the indictment would be unwarranted.

First, Mr. Ellison is validly serving as the Acting U.S. Attorney under the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq*. Once (a) Mr. Ellison resigned as interim U.S. Attorney, and (b) the Attorney General designated him as First Assistant U.S. Attorney (exercising authority under §§ 509 and 510), Mr. Ellison automatically became the Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1).

Second, Defendant is mistaken that Mr. Ellison's time limit for serving as Acting U.S. Attorney under the FVRA has expired. Under the FVRA, an acting official, by default, may serve for 210 days after the vacancy occurs. *See* 5 U.S.C. § 3346. Where the vacancy occurred during a presidential transition, that time is extended to 300 days. *See id.* § 3349a. There is no basis for Defendant's suggestion that, rather than applying the FVRA's time limits to Mr. Ellison's acting service, it should instead borrow the 120-day time limit applicable to an interim U.S. Attorney

appointed under § 546(a), given that (as Defendant's motion correctly assumes) both § 546 and the FVRA are available to designate officials to perform the functions of U.S. Attorney. *See* MTD 11.

Finally, even if Mr. Ellison's service as Acting U.S. Attorney were in doubt, there still would be no basis to bar him or the Assistant U.S. Attorneys (AUSAs) assigned to this case from supervising or prosecuting the case. At minimum, the Attorney General validly designated Mr. Ellison to perform the delegable tasks of the U.S. Attorney when she appointed him to serve as the First Assistant and thus Acting U.S. Attorney for the United States Attorney's Office for the District of New Mexico ("USAO-DNM"). Whether or not Mr. Ellison technically qualifies as Acting U.S. Attorney, the Attorney General has validly delegated to him all the delegable functions of that office, including supervising prosecutions and other matters, subject in turn to supervision by the Attorney General and Deputy Attorney General, both of whom are Senate-confirmed.

Similarly, the Assistant U.S. Attorneys assigned to this matter exercise the Attorney General's delegated authority subject to her supervision. And there is no basis in any event to disqualify the entire USAO-NM from this matter or dismiss the indictment. Neither the FVRA nor Section 546 authorizes dismissal of an indictment. Dismissal of an indictment is warranted only for a Due Process violation or insufficient pleadings under Rule 12, and Defendant shows neither.

## STATEMENT OF FACTS

On February 17, 2025, Alexander Uballez, the U.S. Attorney for the District of New Mexico who had been appointed by President Biden and confirmed by the Senate, resigned. *See* https://www.justice.gov/usao-nm/pr/us-attorney-alexander-uballez-step-down-concluding-impactful-tenure-new-mexico. By virtue of the default provisions of the FVRA, 5 U.S.C. § 3345(a)(1), Holland S. Kastrin, who was then First Assistant U.S. Attorney for the district, became Acting U.S. Attorney. On April 17, 2025, the Attorney General appointed Mr. Ellison as U.S. Attorney pursuant to 28 U.S.C. § 546. *See* Exh. 1. Mr. Ellison has served as an Assistant U.S.

Attorney in the District of New Mexico since November 2018. Under Section 546, Mr. Ellison was authorized to serve as U.S. Attorney on an interim basis for 120 days. *See* 28 U.S.C. § 546(c)(2). Shortly thereafter, Kimberly Brawley was designated the First Assistant U.S. Attorney.

On August 13—118 days into Mr. Ellison's term as U.S. Attorney—Mr. Ellison resigned from that position. *See* Exh. 2. That same day, Ms. Brawley was reclassified as the Deputy U.S. Attorney. *See* Exh. 4. The next day, the Attorney General designated Mr. Ellison as the First Assistant U.S. Attorney, under which position he "will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d." Exh. 3. That office being vacant, Mr. Ellison began serving as Acting U.S. Attorney under the FVRA's default provision, 5 U.S.C. § 3345(a)(1). He continues to serve in that role today.

## ARGUMENT

### I.    Analytical Framework

U.S. Attorneys are appointed by the President subject to the advice and consent of the Senate. 28 U.S.C. § 541(a). When a U.S. Attorney vacates the office, Congress has provided three methods for performing the functions of that office on a temporary basis—and ensuring the uninterrupted functioning of the U.S. Attorney's Office—until a new Senate-confirmed U.S. Attorney takes office. Each of those methods has precise rules, benefits, and drawbacks. It is typically up to the President, or principal officers acting on his behalf, to decide which method is best suited to the circumstances, and those methods generally supplement—rather than replace— each other.

First, in 28 U.S.C. § 546, Congress authorized the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant" to serve on an interim basis for 120 days or until a Senate-confirmed U.S. Attorney takes office. *Id.*

§ 546(a), (c). The Attorney General may not appoint someone whose nomination has been rejected by the Senate, but a pending nominee may serve as interim U.S. Attorney. *Id.* § 546(b). If an interim appointment expires, and the vacancy has not otherwise been filled, the district court may appoint an interim U.S. Attorney. *Id.* § 546(d).

Second, in the generally applicable FVRA, Congress authorized certain individuals to temporarily perform the duties of a vacant office "in an acting capacity," 5 U.S.C. § 3345(a), subject to specified time limitations, *id.* § 3346. The default rule is that the "first assistant" to the vacant office serves as the "acting officer," *id.* § 3345(a)(1), unless the President designates certain other officers or long-serving agency employees to serve in that role, *id.* § 3345(a)(2)–(3).

The FVRA generally prohibits current nominees for an office from filling the vacancy on an acting basis, unless they served as the first assistant for at least 90 days within the year preceding the vacancy. *Id.* § 3345(b)(1)(B); *see NLRB v. SW General, Inc.*, 580 U.S. 288, 305 (2017). For first assistants who are *not* current nominees, the statute requires no minimum term of service in that role. The FVRA is the "exclusive means" for authorizing an "acting official" to temporarily perform the duties of a vacant office, "unless" Congress has expressly provided otherwise or the President makes a recess appointment. 28 U.S.C. § 3347(a). Where Congress has enacted an agency-specific statute that provides a means for acting service, both that statute and the FVRA are available. *See Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016).

Third, Congress has authorized the Attorney General to delegate authority, including the non-exclusive duties of a U.S. Attorney, to other Department officers or employees. The Attorney General is the "head of the Department of Justice," 28 U.S.C. § 503, and is vested with "[a]ll functions" of DOJ's officers, agencies, and employees, subject to narrow exceptions not relevant here, *id.* § 509. That includes the U.S. Attorneys' functions to conduct litigation in their districts. Indeed, § 515(a) specifies that the Attorney General may "conduct any kind of legal

proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct."
Congress also independently vested the Attorney General with plenary authority to conduct and
supervise litigation on behalf of the United States. *See id.* §§ 516–19.

The Attorney General also has unquestioned authority to appoint attorneys within DOJ and
to delegate her functions to them. Congress has specifically empowered the Attorney General to
appoint other attorneys to carry out the Department's functions, including special attorneys and
special assistants to the Attorney General, *id.* § 515(a), Assistant U.S. Attorneys, *id.* § 542, special
attorneys to assist U.S. Attorneys, *id.* § 543, and other "officials" to "detect and prosecute crimes
against the United States," *id.* § 533(1). And the Attorney General may delegate "any function of the
Attorney General" to "any other officer, employee, or agency of the Department of Justice," *id.*
§ 510, and may direct any Department officer "or attorney specially appointed by the Attorney
General under law" to "conduct any kind of legal proceeding, civil or criminal, … which United
States attorneys are authorized by law to conduct," *id.* § 515(a); *see also id.* § 518(b).

## II.     Mr. Ellison Is Validly Serving as the Acting U.S. Attorney

Under the FVRA, when an Executive Branch office subject to Presidential appointment
and Senate confirmation (a "PAS" office) becomes vacant due to the resignation of the incumbent
officeholder, another official may perform all the functions of that office on an acting basis. *See* 5
U.S.C. § 3345(a). There is no dispute that the office of the United States Attorney for the District of
New Mexico is a PAS office in the Executive branch subject to the FVRA, *see* 28 U.S.C. § 541; 5
U.S.C. §§ 101, 105, and that it is vacant. Accordingly, the FVRA permits the Executive Branch to
appoint an acting officer to temporarily exercise the functions and duties of that office.

As explained, § 3345(a) identifies three categories of individuals who may perform the
functions of a vacant office on an acting basis. The President may designate another PAS officer, or
certain other agency officers or employees, to serve as the acting official. 5 U.S.C. § 3345(a)(2)–(3).

If the President does not make such a selection, the "first assistant to the office" shall, by default, "perform the functions and duties of the office temporarily in an acting capacity," subject to statutory time limits. *Id.* § 3345(a)(1).

That default provision is at issue here. As explained above, Mr. Ellison resigned his position as interim U.S. Attorney on August 13, two days before his term was set to expire. Exh. 2. The same day, pursuant to authority including 28 U.S.C. §§ 509 and 510, the Attorney General designated Mr. Ellison the First Assistant, which, by operation of the FVRA, automatically made him Acting U.S. Attorney. Exh. 3. The position of First Assistant itself became vacant on that same date when the Attorney General, through her delegate, reclassified Ms. Brawley as Deputy U.S. Attorney. *See* Exh. 4. The Attorney General designated Mr. Ellison as the First Assistant United States Attorney, in accordance with DOJ regulations, 28 C.F.R. § 0.137(b). Exh. 3. Accordingly, under the default provision of the FVRA, Mr. Ellison "shall perform the functions and duties of the office" of United States Attorney "in an acting capacity," subject to the time limits of the FVRA. 5 U.S.C. § 3345(a)(1).

Notwithstanding that statutory authorization, Defendant argues that Mr. Ellison cannot perform the duties of the U.S. Attorney in an acting capacity because he was not the First Assistant U.S. Attorney on February 17, 2025, when the last Senate-confirmed U.S. Attorney resigned and the vacancy first arose. MTD at 7-8.[1] That contention lacks merit. The FVRA does not require a first assistant to be an incumbent *at the moment* the vacancy arose in order to serve as an acting PAS officer under the default provision in § 3345(a)(1).

---

[1] The district court in *United States v. Giraud*, __ F.Supp.3d __, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) credited this argument, but it was incorrect to do so for the reasons explained below. *See also* Government's Opening Brief, No. 25-2635 (3d Cir. Sept. 12, 2025).

There is no basis for an "already-in-place" (MTD 3) requirement in the statutory text. A "vacant office" under § 3345(a) is a continuing state. The statute provides that "[i]f" a PAS officer "dies, resigns, or *is* otherwise unable to perform" the functions of the office, then the first assistant "shall perform" those functions in an acting capacity. *Id.* (emphasis added). Mr. Ellison's appointment complies with the plain meaning of that provision: the office of U.S. Attorney was vacant when Mr. Ellison was designated as First Assistant U.S. Attorney and remains vacant, so Mr. Ellison "shall perform" the duties of the office of U.S. Attorney on an acting basis (subject to statutory time limits). Defendant's contrary interpretation ignores the present-tense phrasing of the statute and the continuing nature of a vacancy.

Moreover, the FVRA provides that if a vacancy exists, "the first assistant *to the office* of such officer shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1) (emphasis added). The statute does not require that the individual have been serving as the first assistant to a particular PAS officeholder at a particular time. The upshot is that whoever is the first assistant to a vacant office, at any time during the vacancy, automatically becomes the acting officer, subject to the FVRA time limits—as one would expect. The FVRA does not impose a counterintuitive limitation that restricts acting service only to the individual (assuming there was one) who happened to be serving as the first assistant to the PAS officeholder when the vacancy initially arose.

Later provisions in § 3345 confirm this reading. The provision at § 3345(b)(1)(A) expressly contemplates that a first assistant may serve as an acting official even if he "did not serve in the position of first assistant" prior to the vacancy so long as he is not *also* the nominee. *Id.* If § 3345(a)(1) was confined to the first assistant (if any) in place at the time of the vacancy, then there would be no need for § 3345(b)(1)(A) to disqualify a nominee who did not serve in that role prior to the vacancy. Under Defendant's reading, § 3345(b)(1)(A) would be rendered superfluous.

Indeed, Congress knew how to impose an "already-in-place" requirement. Elsewhere in the same section, Congress explicitly imposed backward-looking eligibility requirements that do not apply to whether a first assistant is eligible to serve under § 3345(a)(1). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). Two paragraphs after (a)(1), for instance, Congress made ineligible for a presidential Acting designation certain officials who had not served in the agency for at least 90 days in the year preceding when the vacancy arose. *See* 5 U.S.C. § 3345(a)(3)(A). In the next subsection of the statute, as well, Congress prohibited having an acting official also be the nominee for the vacant office unless the nominee had served as the first assistant for at least 90 days before the vacancy arose. *See id.* § 3345(b)(1)(A). Both provisions turn on the state of affairs during the time preceding the vacancy. No such backward-looking eligibility requirement, however, applies to an official who is appointed first assistant under § 3345(a)(1) and is not the nominee for the position in question.

This plain-text interpretation of the FVRA is both straightforward and longstanding. Indeed, the Government Accountability Office ("GAO")—a component of the Legislative Branch statutorily charged with monitoring FVRA compliance, *see* 5 U.S.C. § 3349(b)—has long agreed that a first assistant may serve as an acting officer under the FVRA even if he does not become first assistant until after the vacancy first arose. *See* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001), available at https://www.gao.gov/assets/gao-02-272r.pdf. The Department of Justice's Office of Legal Counsel ("OLC"), which provides controlling advice to Executive Branch officials on questions of law concerning FVRA compliance, has adopted the same position. *See* Designation of Acting Associate Attorney General, 25 Op. O.L.C. 177, 179-81 (2001).

In asserting that (a)(1) operates only upon first assistants in place at the time the vacancy arises, MTD 7 (relying upon *Giraud*, 2025 WL 2416737, at *14), Defendant suggests that the "simple if-then form" of the provision supports his reading. But the automatic nature of the provision does not suggest that it "trigger[s]" only once—at "the moment that the vacancy occurs." On the contrary, because a vacancy is a continuing state, the automatic, present-tense nature of § 3345(a)(1)'s default rule establishes that whoever is serving as the first assistant at a particular moment during the vacancy becomes the acting official for the specified time period, unless the President instead invokes (a)(2) or (a)(3). If only the first assistant who was in office when the vacancy arose could serve, then § 3345(a)(1) could not apply once that first assistant left office. If only the "already-in-place" first assistant were eligible to serve, then § 3345(a)(1) would be less useful as an automatic default rule. There are approximately 1,000 PAS officials in the Executive Branch,[2] and § 3345(a)(1) applies to first assistants precisely because an agency head can often ensure that there is a first assistant in place, so the President does not have to personally fill every PAS vacancy that arises.

Defendant is also mistaken to suggest that this interpretation of the first-assistant provision in 5 U.S.C. § 3345(a)(1) "would render the limits in subsections (a)(2) and (a)(3) surplusage in the vast majority of cases." MTD 7 (quoting *Giraud*, 2025 WL 2416737, at *15). There are at least two significant circumstances where the President cannot rely on subsection (a)(1) to select an acting officer and thus subsections (a)(2) and (a)(3) continue to play an important role. When the first assistant position is itself a PAS office, (a)(1) is unavailable because the Executive Branch cannot appoint a first assistant without Senate confirmation. Instead, the President must use (a)(2) or (a)(3).

---

[2] *See* Center for Presidential Transition, Presidential Transition Guide 93 (2023), *available at* https://presidentialtransition.org/wp-content/uploads/sites/6/2023/11/2023-Presidential-Transition-Guide.pdf (compiling data from the 2016 United States Government Policy and Supporting Positions (Plum Book)).

That is often the case for the highest positions in agencies. *See, e.g.*, 22 U.S.C. § 2651a(a)(2) (both Secretary of State and Deputy Secretary are PAS offices). Subsections (a)(2) and (a)(3) also play a distinct role when the President wants to leave the current first assistant in place and appoint someone else to be the acting officer—*e.g.*, because the individual serving as first assistant is the best suited to perform the important second-in-command functions of a first assistant. *See, e.g.*, *Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018) (discussing the designation of Matthew Whitaker as Acting Attorney General under § 3345(a)(3)).

Accordingly, upon his designation as First Assistant U.S. Attorney, Mr. Ellison automatically began serving as the Acting U.S. Attorney, subject to the time limits set forth in the FVRA.

Defendant next devotes substantial effort to attempting to establish that Mr. Ellison is not serving as the lawful Acting U.S. Attorney because Mr. Ellison's resignation from the interim position did not create a new vacancy under the FVRA. MTD 9-11. But whether that resignation created a new vacancy is immaterial to the present motion. Whether it was Mr. Uballez's resignation in February (during a presidential inaugural transition, *see* § 3349a) or Mr. Ellison's resignation in August that created the vacancy, Mr. Ellison has *at least* two months left to serve as the Acting U.S. Attorney. In either case, the Court would be compelled to deny Defendant's motion.

### III.    An Acting U.S. Attorney Under the FVRA Is Not Limited by § 546 to a 120-Day Period of Acting Service.

Defendant contends that even if Mr. Ellison was validly designated Acting U.S. Attorney, his time period for serving expired before he was indicted because he previously served as the interim U.S. Attorney under 28 U.S.C. § 546. MTD 11-18. That is incorrect.

As an initial matter, Defendant is correct to "assume[]" that both 28 U.S.C. § 546 and the FVRA are available, nonexclusive options to designate and appoint officials to perform the functions of a U.S. Attorney. MTD 11. He is incorrect, however, to assert that once the Attorney General has invoked § 546, the FVRA is off the table.

10

Section 3347(a) of the FVRA, the Act's "exclusivity" provision, explains how the FVRA interacts with agency-specific statutes. The FVRA is the "exclusive means for temporarily authorizing an acting official" to serve in a position otherwise subject to the advice and consent of the Senate "unless ... a statutory provision expressly ... designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a). When another statutory provision provides for service as an acting officer, the FVRA no longer is the "exclusive" means of temporarily authorizing service as an acting official. But it still is *available*, unless the other statute expressly displaces the FVRA. A contrary reading would invert the meaning of the FVRA's exclusivity provision, transforming it from a rule about when the FVRA is exclusive of other statutes into one about when other statutes are exclusive of the FVRA.

The Ninth Circuit has adopted just that interpretation of the statute. In *Hooks*, the Ninth Circuit rejected the argument that the FVRA was inapplicable because an agency-specific statute—there the National Labor Relation Act's vacancy provision applicable to the NLRB General Counsel—was available. 816 F.3d at 556 (discussing 29 U.S.C. § 153(d)). The "text of the respective statutes" "belied" any such argument. *Id.* at 555. The existence of an agency-specific statute means only that "neither the FVRA nor the [agency-specific statute] is the exclusive means of appointing" an acting officer, and "the President is permitted to elect between these two statutory alternatives." *Id.* at 556. So too here, an interim appointment under 28 U.S.C. § 546 supplements, rather than supplants, the methods for designating an acting U.S. Attorney under the FVRA.

Defendant argues that, even if the FVRA is available for an acting official to perform the functions of the office of U.S. Attorney, the Court should strike out the express time limits the FVRA provides for acting service—here, 210 or 300 days, depending on whether the vacancy occurs during a presidential transition—and replace it with the 120-day time period derived from a different statute, 28 U.S.C. § 546(c). MTD 11-18. But if, as the Ninth Circuit's decision in *Hooks* suggests, the

FVRA is fully available even after an interim appointment under § 546 has expired, all of it is available, including the distinct, reticulated time limits applicable to acting service for which the FVRA expressly provides. *See* 5 U.S.C. §§ 3346, 3349a. Defendant's arguments to the contrary are premised on their being "conflict[]" between the FVRA and § 546, MTD at 12, but he has articulated no such conflict. It is perfectly consistent for Congress to have provided the Executive Branch with multiple options for filling vacancies in the office of the U.S. Attorney and to have provided different time periods depending on the method chosen. For that same reason, Defendant's reliance on the general/specific canon is misplaced. This canon applies "when conflicting provisions simply cannot be reconciled." Antonin Scalia & Brian A. Garner, *Reading Law* 183 (2012). Without an irreconcilable conflict, there is no occasion to apply the canon.

Nor would failing to engraft a 120-day time limit on the FVRA render § 546(d)'s method for district court appointment "superfluous." MTD 12. Even though the government has long viewed both the FVRA and § 546 are available methods for dealing with U.S. Attorney vacancies, *see Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149-50 (2003), the government does not always avail itself of the FVRA when a § 546 interim appointment is expiring. There have frequently been instances in which the Executive Branch has allowed an interim United States Attorney's appointment to expire, and authority for the district court to make an appointment under § 546(d) has been triggered.[3] Both methods have pros and cons. For example, an interim United States Attorney appointed by the court under § 546(d) may serve indefinitely until the vacancy is filled, whereas an acting U.S. Attorney may serve as acting subject to the FVRA's reticulated time limits. Neither of those distinct authorities supersedes or subsumes the other.

---

[3] In this district, for example, the District Court appointed Gregory J. Fouratt in 2008, *see* https://web.archive.org/web/20091108164642/http://www.abqtrib.com/news/2008/jan/26/fouratt-named-replace-iglesias-us-attorney-new-mex/, and Fred J. Federici in 2022, *see* https://www.justice.gov/archives/usao-nm/meet-us-attorney-Federici.

Defendant declares that § 546(c)(2)'s 120-day time limit should be strictly enforced given the 'mischief' that brought it about." MTD 15-18. But that has nothing to do with the FVRA, which is a different statute and serves a distinct, though overlapping, function. Even if one assumes that § 546(c) was enacted to prevent indefinite use of interim U.S. Attorneys, that does not compel the conclusion that Congress meant § 546(c) to override the existing time limits under the FVRA.

## IV.    As First Assistant, Mr. Ellison Is Authorized to Supervise Criminal Prosecutions Under Delegated Authority Even If He Is Not the Acting U.S. Attorney.

Although 28 U.S.C. § 547(1) authorizes the U.S. Attorney to "prosecute for all offenses against the United States" in his district, the authority to do so is not exclusive. All the functions of the U.S. Attorney, including the power to prosecute, are also vested in the Attorney General, 28 U.S.C. § 509, who has authority to delegate any of her functions to others in the Department as she sees fit, 28 U.S.C. § 510. In addition, the Attorney General has the power to supervise and direct U.S. Attorneys and Assistant United States Attorneys in the discharge of their duties. 28 U.S.C. § 519. She also has the power herself to conduct "any kind of legal proceeding . . . which United States attorneys are authorized by law to conduct," and can delegate that power to other officials. *Id.* § 515. The Attorney General also has separate, direct authority to conduct and supervise all litigation on behalf of the United States. The Attorney General may "personally conduct and argue any case in a court of the United States in which the United States is interested." *Id.* § 518(b). The Attorney General also may "supervise all litigation to which the United States, an agency, or officer thereof is a party" and "direct all United States attorneys, assistant United States attorneys, and special attorneys" in exercising their duties. *Id.* § 519; *see also id.* §§ 516-517.

In citing § 509 and § 510 in designating Mr. Ellison as the First Assistant U.S. Attorney, the Attorney General made it clear that Mr. Ellison is her choice to lead the USAO-DNM and perform the functions of the First Assistant. Exh. 3. Accordingly, even if Mr. Ellison were not validly serving as the Acting U.S. Attorney, he would be fully authorized, by delegation, to supervise criminal

prosecutions in New Mexico because the Attorney General has chosen him to do so by designating him the First Assistant. Mr. Ellison's supervision of Defendant's case is, at a minimum, valid under delegated authority from the Attorney General.

Nothing in the FVRA provides otherwise.[4] The two district courts that have reached a contrary conclusion as to Acting U.S. Attorneys in other districts have done so by misreading the exclusivity and remedial provisions of the FVRA. *Giraud*, 2025 WL 2416737 at *21-27; *United States v. Garcia* et al. No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640, at *11-14 (D. Nev. Sept. 30, 2025). Section 3347, titled "Exclusivity," first provides that the FVRA is "the exclusive means for temporarily authorizing *an acting official* to perform the functions and duties" of a PAS office unless an agency-specific statute (like 28 U.S.C. § 546) applies. § 3347(a) (emphasis added).[5] Subsection (b) reinforces that command by preventing the agency head from using general statutory delegation authority to select an acting official. The statute's enforcement mechanism is then found in the statute's next section, § 3348, titled "Vacant office." That section provides that when no acting official is serving under sections 3345 to 3347 during a vacancy, the office "shall remain vacant." § 3348(a). During such vacancy, "any function or duty of such office" that is "required by statute" or

---

[4] The district court in *United States v. Giraud*, __ F.Supp.3d __, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) dismissed delegation as a source of authority for the First Assistant to perform all the functions of an acting U.S. Attorney, while declining to foreclose "the possibility of parceling out these duties to separate individuals or delegating only a clearly limited subset of nonexclusive and delegable duties." *Giraud,* 2025 WL 2416737, at *26 n.257. Despite his reliance on other aspects of *Giraud*, Defendant has not addressed the possibility of delegation. The United States nevertheless provides the outlines of that argument here. Additional detail is presented in the United States' briefs on appeal in *United States v. Giraud et al.*, Third Cir Nos. 25-2635 & 25-2636.

[5] An acting official derives authority from the FVRA and is authorized to perform *all* "the functions and duties of the office" (whether exclusive and nondelegable or not) for which the official is acting. 5 U.S.C. § 3345(a). A non-acting official, by contrast, derives authority from a delegation. That difference is significant because a non-acting official cannot exercise authority that is "exclusive to [the] office" and thus nondelegable. *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022); *see also Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073 (9th Cir. 2024).

"by regulation" "to be performed by the applicable officer (and only that officer)" may be performed only by the head of the agency. § 3348(a)(2), (b)(2). If anyone else performs an exclusive, nondelegable function of the PAS officer, that action "shall have no force or effect," § 3348(d)(1), and "may not be ratified," *id.* at (d)(2). In contrast, Section 3348 contains no bar against the performance of nonexclusive or delegable functions—or the ratification of such actions—because those functions are not the concern of § 3347. The two sections thus operate in parallel: § 3348 provides the consequence for improper designation of an *acting official* under § 3347—that is, someone who can perform even the exclusive, nondelegable functions of the office. Actions that are *not* exclusive to the office can be taken as in the normal course of business: by whomever validly exercises the agency's power to perform them. In short, while the FVRA is the exclusive means of empowering an official to be an acting official, *see id.* § 3347(a), it does not remove an agency head's normal authority to assign the *nonexclusive* functions of the PAS office.

Every court of appeals to consider the issue has agreed with this plain-text interpretation of the FVRA. In *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), the Federal Circuit held that the FVRA did not forbid delegating the functions of a PAS office to a non-acting official. 35 F.4th at 1338. That case concerned a challenge to the denial of a rehearing request of an order invalidating a patent. The authority to decide such rehearing requests was vested in the Director of the U.S. Patent and Trademark Office, a PAS office. *See id.* at 1332; 35 U.S.C. § 3(a)(1). But because the offices of Director and Deputy Director were vacant, the rehearing decision was made by the Commissioner of Patents, who had been delegated all of the nonexclusive duties and functions of the Director under a standing order issued by a previous Director. *See Arthrex*, 35 F.4th at 1332. As relevant here, the patent holder challenged the rehearing denial on the ground that § 3347's exclusivity provision prohibited the wholesale delegation of the Director's authority to a subordinate officer and thus deprived the decision of "force or effect" under § 3348(d)(1). *See id.* at 1335.

The Federal Circuit rejected the challenge, explaining that the FVRA "does not … restrict" the delegation and performance of a "PAS officer's delegable duties when he is absent." *Arthrex*, 35 F.4th at 1339. The court rejected the patent holder's argument that this interpretation would render § 3347(b) superfluous, explaining that § 3347(b) "merely provides that a statute granting the head of an agency 'general authority . . . to delegate [his] duties' does not exempt the agency from the FVRA." *Id.* at 1338. When "Congress grants an agency head general delegation authority but specifies that certain duties are non-delegable," the court explained, "§ 3347(b) makes clear that the FVRA still applies to those non-delegable duties." *Id.*

The Third Circuit relied on the Federal Circuit's decision in *Arthrex* when resolving a similar FVRA objection in *Kajmowicz. See* 42 F.4th at 148 (citing *Arthrex*, 35 F.4th at 1336). *Kajmowicz* concerned a challenge to a rule that was originally issued by Matthew Whitaker in his role as Acting Attorney General (not pursuant to a delegation of authority), and that was later ratified by Attorney General Barr. The plaintiff challenged the validity of the rule on the ground that Whitaker's designation as Acting Attorney General conflicted with the FVRA. The Third Circuit rejected the challenge, reasoning that it did not need to resolve whether Whitaker's acting designation violated the FVRA because the issuance of the rule was a delegable function that could be subsequently ratified by the Attorney General under 5 U.S.C. § 3348(d). *Kajmowicz*, 42 F.4th at 148. In so holding, the Third Circuit agreed with the Federal Circuit's determination that the FVRA remedial provision's "language is unambiguous" and "applies only to the functions and duties that a [PAS] officer alone is permitted by statute . . . to perform." *Id.* (quoting *Arthrex*, 35 F.4th at 1336).

The Ninth Circuit then relied on *Arthrex* and *Kajmowicz* in reaching the same conclusion in a challenge to a rule promulgated by Acting Secretary of Homeland Security Chad Wolf that was later ratified by Secretary of Homeland Security Alejandro Mayorkas. *See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. DHS,* 107 F.4th 1064, 1073 (9th Cir. 2024) (holding that the FVRA's ratification bar

"applies only to those duties of an officer that are nondelegable"). The Second Circuit reached a similar result in *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009), holding that the FVRA did not prohibit an inferior officer from performing a function of a PAS officer who had resigned because the agency's regulations permitted the PAS officer to delegate that function.

Here, because Mr. Ellison is validly exercising delegated authority, it is not strictly necessary for this Court to decide whether Mr. Ellison's designation as Acting U.S. Attorney is invalid because he was not the "already in place" first assistant. In either event, Defendant's motion must be denied. As explained, the FVRA does not preclude the delegation of delegable duties, 5 U.S.C. § 3347, and it only invalidates actions by a non-acting official that intrude upon the exclusive, nondelegable functions of the PAS office at issue. *See* 5 U.S.C. § 3348(a)(2), (b), (d). Defendant has identified no action that Mr. Ellison has taken in Defendant's case that belongs exclusively to the office of the U.S. Attorney, nor is the United States aware of any. Neither indicting nor supervising a case is an exclusive function of the U.S. Attorney.[6] Mr. Ellison's performance of these functions is therefore not unlawful under the FVRA.

If Defendant is correct that Mr. Ellison is not properly serving as the Acting U.S. Attorney, then the highest current post in the USAO-DNM is that of First Assistant U.S. Attorney—and it is undisputed that Mr. Ellison validly holds that post. By virtue of being the First Assistant, Mr. Ellison is empowered to supervise criminal litigation in the district. Defendant has not pointed and cannot point to any provision in the FVRA that prohibits the First Assistant, himself supervised by the Attorney General and her delegates, from supervising the district's Deputy U.S. Attorney, division chiefs, section supervisors, and line AUSAs—in short, every level of employee who steers or

---

[6] *See* 28 U.S.C. §§ 510 (Attorney General may delegate any function), 518(b) (Attorney General may personally conduct any federal case), 519 (Attorney General shall supervise litigating and direct U.S. Attorneys and Assistant U.S. Attorneys in doing so), 547(a)(1) (U.S. Attorney's authority to prosecute all offenses against the United States).

conducts criminal litigation on behalf of the United States in this district. The Attorney General acts

well within her authority, independent of the FVRA, to direct that Mr. Ellison (who has served as an

AUSA for nearly seven years) supervise any and all criminal cases in the district. It is irrelevant to

Defendant's criminal charge whether Mr. Ellison is properly using the title of Acting U.S. Attorney

or should instead be signing pleadings as First Assistant U.S. Attorney. Either way, no action he has

taken with respect to Defendant's case is unlawful under the FVRA.

### V.    Mr. Ellison's Appointment Does Not Violate the Appointments Clause.

The Appointments Clause "divides all constitutional officers into two classes: 'inferior

officers' and 'noninferior officers'" (called "'principal officers'"). *United States v. Smith*, 962 F.3d 755,

763 (4th Cir. 2020). "Principal officers must be appointed by the President with the advice and

consent of the Senate." *Id.*; *see Edmond v. United States*, 520 U.S. 651, 660 (1997). "Inferior officers

may be appointed in the same manner, but doing so is not constitutionally required." *Smith*, 962 F.3d

at 763. "Instead, should it so choose, Congress may authorize the President alone [or the Head of a

Department] to appoint inferior officers without the advice and consent of the Senate." *Id.*; *see* U.S.

Const. Art. II, § 2, cl. 2.

Mr. Ellison is an inferior officer for two reasons. First, U.S. Attorneys are themselves

inferior officers. *Myers v. United States*, 272 U.S. 52, 159 (1926); *United States v. Gantt,* 194 F.3d 987,

999–1000 (9th Cir. 1999) (same), overruled on other grounds; *United States v. Hilario*, 218 F.3d 19,

24–36 (1st Cir. 2000). That means that interim U.S. Attorneys and Acting U.S. Attorneys are at most

inferior officers, too. *See, e.g., id.* at 36. As the Supreme Court explained in *United States v. Arthrex,

Inc.*, 594 U.S. 1 (2021), "'[w]hether one is an "inferior" officer depends on whether he has a superior

other than the President.'" 594 U.S. at 13 (quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997)).

The decisions of U.S. Attorneys are supervised and can be reversed by the Attorney General and the

Deputy Attorney General. Because U.S. Attorneys are "'directed and supervised at some level by

others who were appointed by Presidential nomination with the advice and consent of the Senate'"—namely, the Attorney General and Deputy Attorney General—and therefore qualify as inferior officers under the principles on which *Arthrex* itself relied. *Id.* (quoting *Edmond*, 520 U.S. at 663); *see* 28 U.S.C. § 519 ("[T]he Attorney General … shall direct all United States attorneys[.]").

Defendant's argument also downplays the Supreme Court's explicit observation in *Myers* almost 100 years ago that U.S. Attorneys are inferior officers, *see Myers*, 272 U.S. at 159, calling it "dicta." MTD 19 n.16. Of course, a lower court is "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996). While *Myers* is not "recent," neither has it been "enfeebled" by later statements. This Court should follow the Supreme Court's description of U.S. Attorneys as inferior officers.

Second, even if the position of U.S. Attorney were a principal officer, the acting position would not be anything more than an inferior officer. Even "acting heads of departments"—such as an Acting Attorney General—"are not principal officers because of the temporary nature of the office." *Smith*, 962 F.3d at 765 (citing cases). An Acting U.S. Attorney "under the FVRA is 'only charged with the performance of the duty of the superior for a limited time and under special and temporary conditions.'" *Smith*, 962 F.3d at 764 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). Accordingly, it was valid for Congress to authorize the Attorney General, as Head of the Department of Justice, to designate Mr. Ellison as First Assistant U.S. Attorney and thereby make him Acting U.S. Attorney by virtue of the FVRA.

## VI. The Court Should Not Dismiss the Indictment, Disqualify the Entire USAO-NM, or Disqualify Mr. Ellison from Supervision.

In any event, the Assistant U.S. Attorneys assigned to this prosecution can continue with it because they derive their power directly from the Attorney General, not upon a delegation of authority from the U.S. Attorney. Although U.S. Attorneys lack express statutory authority to

appoint Assistant U.S. Attorneys, the Attorney General has that authority—and authority to remove them, too. 28 U.S.C. § 542(a) ("The Attorney General may appoint one or more assistant United States attorneys in any district where the public interest so requires."); *id.* § 542(b) ("Each Assistant United States attorney is subject to removal by the Attorney General."). The Attorney General also has express statutory authority to "supervise all litigation to which the United States, an agency, or officer thereof is a party, and [to] direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties." *Id.* § 519; *see id.* § 516 ("[T]he conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.").

The Ninth Circuit has held that an invalidly appointed U.S. Attorney does not mean that the government lacked the power to prosecute the defendant. *See Gantt*, 194 F.3d at 998 ("An infirmity in the United States Attorney's appointment would not generally affect the jurisdiction of this court so long as a proper representative of the government participated in the action."). The First Circuit has likewise concluded that an Assistant U.S. Attorney's "ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party, *see* [28 U.S.C.] § 516." *Hilario,* 218 F.3d at 22; *see also United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir. 2001) ("An appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute."); *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 n.2 (D.P.R. 2000) (similar); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) (similar).

Under authority derived from the Attorney General, the assigned AUSAs can continue to prosecute this case—which was initiated by a validly empaneled grand jury. And they may do so subject to supervision by both Mr. Ellison and Senate-confirmed officials in Main Justice, including

the Attorney General and the Deputy Attorney General. To hold that the line AUSAs may be supervised *others* in the USAO-DNM but not by Mr. Ellison would be illogical. If nothing else, Mr. Ellison is a duly-appointed AUSA who can supervise other AUSAs at the direction of his superiors.

To the extent that Defendant suggests that the Court should remedy any violation by disqualifying the entire USAO-DNM and not just Mr. Ellison, *see* MTD 22, 25 (requesting a stay of proceedings "until a proper acting, interim, or permanent United States Attorney is serving in this district"), that contention likewise fails. "[E]very circuit court that has reviewed an officewide disqualification has reversed." *United States v. Williams*, 68 F.4th 564, 572 (9th Cir. 2023) (reversing officewide disqualification); *see United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003) (same); *United States v. Whittaker*, 268 F.3d 185 (3d Cir. 2001) (same); *United States v. Vlahos*, 33 F.3d 758 (7th Cir. 1994) (same); *United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981) (same); *cf. United States v. Shah*, 43 F.4th 356, 360, 362–64 (3d Cir. 2022) (affirming denial of similar motion). Because "disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify a specific" prosecutor, "not all the attorneys in the office." *Bolden*, 353 F.3d at 879 (cleaned up). And here, Defendant cannot justify disqualifying any prosecutor who worked on this case, let alone every prosecutor in the USAO-DNM. *See United States v. Lingala*, 91 F.4th 685, 694–96 (3d Cir. 2024) (affirming denial of motion to disqualify prosecution team). "The disqualification of Government counsel is a drastic measure"—one "a court should hesitate to impose ... except where necessary." *Bolden*, 353 F.3d at 878 (cleaned up). Should the Court find that Mr. Ellison is neither the Acting U.S. Attorney nor properly exercising delegated authority from the Attorney General, the remedy would be to disqualify him from supervision while allowing the case to move forward.

Moreover, even were Mr. Ellison not eligible to serve as the Acting U.S. Attorney, "this Court could not dismiss the indictment on that basis." *United States v. Young*, 541 F. Supp. 2d 1226, 1235 (D.N.M. 2008); *see Gantt*, 194 F.3d at 998 ("The constitutionality of § 546(d) would not affect

the validity of indictments, by contrast, as indictments need only be signed by an "attorney for the government."); *see United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) (even assuming that the U.S. Attorney's appointment is invalid, "Defendant's remedy would not be the dismissal of his indictment, for the appointment does not affect defendant's basic constitutional rights."), *aff'd sub nom. United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002).

Defendant's claim that his indictment violates due process, MTD 23, derives entirely from his mistaken contention that Mr. Ellison cannot serve as Acting U.S. Attorney, and that remedy is inappropriate in any event. As the Fourth Circuit put it in similar circumstances, "we are mystified as to exactly what the connection is between the appointment of which" the defendants "complain[]" and their "right to a fair trial." *Smith*, 962 F.3d at 765. There is a Due Process right to an impartial judge, *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Tumey v. Ohio*, 273 U.S. 510 (1927), and a properly constituted jury or grand jury, *Peters v. Kiff*, 407 U.S. 493 (1972). But there is no Due Process right to choose one's prosecutor. Nor is there any government conduct in this case that denies "fundamental fairness" and is "shocking to the universal sense of justice." *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960) (cleaned up).

Federal Rule of Criminal Procedure 12 provides for dismissal for (a) a defect in instituting the prosecution or (b) deficiency of the indictment. *See* Fed. R. Crim. P. 12(b)(3)(A) and (B). The indictment in this case is not deficient under Rule 12(b)(3)(B) because Rule 7(c) requires only that the indictment state facts that constitute a federal offense and be signed by an attorney for the government, all of which are present here.

Nor has Defendant identified any defect in instituting this prosecution. Defendant does not dispute that the grand jury that indicted him were properly empaneled. And, as explained, there is no requirement that the U.S. Attorney sign indictments, and each of the indictments at issue here was signed by an attorney for the government other than Mr. Ellison.

**VII.    The Judges of This District Court May Not Designate an Interim U.S. Attorney.**

Finally, Defendant argues that the judges of the District of New Mexico should appoint another interim U.S. Attorney under 28 U.S.C. § 546(d). MTD at 25-26. This authority arises under § 546(d) only when "an appointment expires under subsection (c)(2)." Here, because Mr. Ellison resigned his interim position as U.S. Attorney before his 120-day term expired, § 546(d) does not apply and the court lacks the authority to appoint a U.S. Attorney. In any case, the statute's language is permissive, not mandatory, *see* 28 U.S.C. § 546(d) (providing that a district court "may appoint a United States attorney"), and a defendant does not have standing to compel the district court to make such an appointment, *Spokeo v. Robbins*, 578 U.S. 330, 338 (2016).

**VIII.    If the Court Grants Defendant's Motion, It Should Stay Its Order Pending Appeal.**

Should the Court disagree with the government's arguments and grant Defendant's motion, it should stay its order pending appeal. Such a stay would be consistent with the disposition of *Giraud*, 1:24-cr-768 (D.N.J.), in which the court stayed its order pending appeal. *See* ECF No. 145.

Courts consider four factors in deciding whether to grant a request for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (citation omitted). The first two factors are "the most critical." *Id.* at 434.

As to the first factor, the United States submits that even if the Court rules against the government, this matter presents substantial questions of law, nearly all of which are matters of first impression in the Tenth Circuit. The second factor should weigh most heavily here because the harm to the government of a wrongful disqualification would be irreparable. *Cf. United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) ("[N]o post-trial relief exists that could remedy the alleged

23

separation of powers injury that would be incurred through wrongful disqualification of the entire

USA's office."). Absent a stay, an adverse order would remove the Executive's choice to lead a

critical Executive Branch component and could require senior leadership of the Department of

Justice to oversee almost every function of the U.S. Attorney's Office. As the Ninth Circuit

recognized in *United States v. Williams,* 68 F.4th 564 (9th Cir. 2023), "the effect of any attorney

disqualification order is fairly irreversible because it materially changes" the party's position, and if

the case is allowed to proceed under such circumstances, no remedy will be available. 68 F.4th at 570

(quotations and brackets omitted). Third, granting a stay will merely preserve the status quo and will

not cause Defendant substantial injury. Fourth, the public interest favors a stay. "The separation of

powers mandates judicial respect for the prosecutor's independence," *United States v. Gen. Dynamics*

*Corp.*, 828 F.2d 1356, 1366 (9th Cir. 1987) (quotations and brackets omitted), and the public has a

strong interest in preserving the Executive Branch's control over criminal prosecutions.

## CONCLUSION

For these reasons, the Court should deny Defendant's motion. We hereby certify that a copy

of this motion was delivered via CM/ECF to counsel for Defendant.

Respectfully submitted,

**RYAN ELLISON**
Acting United States Attorney

/s/
**C. PAIGE MESSEC**
**KIMBERLY BRAWLEY**
Assistant U.S. Attorneys
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-7274
(505) 246-7296 fax